IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
AT HARRISBURG

| | | |
|---|---|---|
| **LOWER SUSQUEHANNA RIVERKEEPER and the LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION,**  Plaintiffs,  v.  **KEYSTONE PROTEIN COMPANY,**  Defendant. | : : : : : : : : : : : : : : : | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

1. This is a citizen suit for declaratory and injunctive relief as well as civil penalties against Defendant Keystone Protein Company ("Keystone") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereafter the Clean Water Act ("CWA")), at its poultry rendering facility in Fredericksburg, Pennsylvania.

2. As detailed below, Plaintiffs allege that Keystone has discharged and continues to discharge pollutants into waters of the United States in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342, and the conditions and limitations of its National Pollutant Discharge Elimination System ("NPDES") Permit Nos. PA0080829 and PA0266345 issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizen's suit provision).

4. The Lower Susquehanna Riverkeeper and the Lower Susquehanna Riverkeeper Association (the Association) mailed notice of the violations and their intent to file suit in letters dated February 19, 2019, and April 9, 2019, respectively, and addressed to Keystone, the United States Environmental Protection Agency ("EPA"), and the Pennsylvania Department of Environmental Protection ("PaDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5. More than sixty days have passed since the notice letters were sent. EPA and PaDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor PaDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the February 19, 2019 or April 9, 2019 notice letters.

6. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the source of the CWA violations is located in this District.

7. Keystone is a limited liability company which maintains a business address at 154 West Main Street, Fredericksburg, PA.

8. Keystone owns and operates a poultry rendering facility that generates industrial wastewater.

9. Keystone Energy is a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10. Plaintiff Lower Susquehanna Riverkeeper (the Riverkeeper) is a specific person who is designated to focus on identifying sources of pollution and enforcing environmental laws. The Riverkeeper actively educates the public on current issues, works with decision-makers to emphasize the economic and social benefits of protecting the Susquehanna River watershed, and

when necessary enforces laws protecting communities and natural resources of the Susquehanna River Watershed.  The current Lower Susquehanna Riverkeeper is Ted Evgeniadis.

11. Plaintiff Lower Susquehanna Riverkeeper Association (the Association) is a grassroots supporting organization for the Lower Susquehanna Riverkeeper.  Ted Evgeniadis is the Association's current Executive Director and is its only paid employee.  The office address of the Riverkeeper and the Association is the same.  The Association is an IRS § 501(c)(3) non-profit that operates as a membership-based, mission-driven organization. It is dedicated to improving and protecting the ecological integrity of the Susquehanna Watershed and Chesapeake Bay.

12. The Riverkeeper and the Association's members use, enjoy, and benefit from the water quality in tributaries receiving discharges from Keystone's poultry rendering facility, including Little Swatara Creek and the lower Susquehanna River.  Their recreational interests include wading, fishing, swimming, and generally enjoying the waters of these streams.  Their environmental, aesthetic, and recreational interests are impaired as a result of nitrogen pollution from Keystone's operations.

13. The Riverkeeper and the Association's members would like to recreate in areas downstream from the areas where Keystone's poultry rendering facility discharges pollutants.  Because of pollutants from that facility, the Riverkeeper and the Association's members refrain from and/or restrict their uses of Little Swatara Creek, the lower Susquehanna River and associated natural resources.  As a result, the environmental, aesthetic, and recreational interests of these members are adversely affected by Keystone's excessive discharge of pollutants.  If Keystone's unlawful discharges ceased, the harm to the interests of the Riverkeeper and the Association's members would be redressed.  An injunction would redress their injuries by

3

preventing future violations of the limits in Keystone's permits. Civil penalties would also deter Keystone from committing future violations.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5) and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17. The Administrator of EPA authorized PaDEP, pursuant to Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on June 30, 1978. 52 Fed. Reg. 3701. The applicable Pennsylvania law for issuing NPDES permits is the Clean Streams Law, 35 P.S. § 691.1, *et seq*.

18. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf. . . . against any person. . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

19. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in section 505(a) of the

CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and "a permit or condition thereof issued" under Section 402 of the CWA, 33 U.S.C. § 1342.

20. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties.

21. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

22. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

23. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended buy the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of up to $37,500 per day for each violation that occurred after January 12, 2009, and $54,833 for each violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4; 84 Fed. Reg. 2059 (Feb. 6, 2019).

**FACTS**

24. On March 30, 2012, PaDEP issued NPDES Permit No. PA0080829 to Keystone authorizing it to discharge from its poultry rendering facility in Fredericksburg, PA to Beach Run in accordance with certain effluent limitations, monitoring requirements, and other conditions set forth in that permit. The permit limited discharges of total nitrogen from Outfall 001 to a

monthly average concentration of 134 mg/l and a maximum daily concentration of 194 mg/l, and requires a minimum of once-weekly monitoring of the discharges.  Those permit limits were in effect from April 1, 2012 until October 31, 2017.

25. On October 26, 2017, PaDEP issued NPDES Permit No. PA00266345 to Keystone authorizing it to discharge from its poultry rendering facility in Fredericksburg, PA to Elizabeth Run, an unnamed tributary to Beach Run, and Little Swatara Creek in accordance with certain effluent limitations, monitoring requirements, and other conditions set forth in that permit.  The permit limits discharges of total nitrogen from Outfall 001 to a monthly average concentration of 103 mg/l and a maximum daily concentration of 147 mg/l, and requires a minimum of twice-weekly monitoring of the discharges.  Those permit limits have been in effect from November 1, 2017 to the present, and are set to continue through at least October 31, 2022.

26. Elizabeth Run, Beach Run, and Little Swatara Creek are tributaries of the Susquehanna River.

27. The Susquehanna River watershed contributes approximately 46% of the total nitrogen load flowing to the Chesapeake Bay.

28. EPA has listed most of the Chesapeake Bay and its tidal waters as impaired because of excess nitrogen, phosphorus and sediment.  Those pollutants cause algae blooms that consume oxygen and create "dead zones" where fish and shellfish cannot survive, block sunlight that is needed for underwater grasses, and smother aquatic life on the bottom.  In 2010, EPA issued a Total Maximum Daily Load that established nitrogen, phosphorus and sediment allocations for the Bay and the streams that flow into it, including the Susquehanna River watershed.

29. PaDEP has classified Keystone as a significant discharger of nitrogen to the Chesapeake Bay.  From January 2015 through December 2018, Keystone discharged approximately 351,579 pounds in excess of its annual loading limit for total nitrogen.

30. PaDEP has listed Little Swatara Creek under Section 303(d) of the CWA as impaired for nutrients, which include nitrogen.

31. NPDES Permit Nos. PA0080829 and PA00266345 each require Keystone to monitor its discharges and report its monitoring results on monthly discharge monitoring reports.

32. Keystone's discharge monitoring reports show that it has exceeded its permit limits for total nitrogen at Outfall 001 on the dates listed in Attachment A to this complaint.

33. On March 30, 2012, Keystone entered into a first Consent Order and Agreement (COA) with PaDEP to construct a new wastewater treatment plant and to comply with the total nitrogen limits in its NPDES permit on or before October 1, 2016.  This COA also imposed stipulated penalties for violations of Keystone's NPDES effluent limits for total nitrogen.

34. As a result of this COA, Keystone made plans to build a new wastewater treatment plant.  The estimated capital cost of the plant was $5,618,959 and its estimated annual operating and maintenance expenses were $790,000, which exceeded the annual operating and maintenance expenses of the existing treatment plant, which were $454,000.

35. On July 17, 2015, Keystone notified PaDEP that it would construct a new chicken processing facility and expanded poultry rendering plant on the property of the existing poultry rendering plant.  The new facility would include a new industrial wastewater plant (IWTP) to serve the new processing plant and expanded poultry rendering facility.  The new IWTP would replace the existing IWTP.  Due to the planned construction of the new IWTP, Keystone decided

not to upgrade the existing IWTP and not to meet its NPDES permit limits for total nitrogen by the October 1, 2016 deadline in the 2012 COA.

      36.     On May 24, 2017, Keystone entered into a second COA with PaDEP that superseded the first COA. The second COA ordered Keystone to begin construction of its new IWTP by December 1, 2019 and complete construction by June 1, 2021. This COA also imposed stipulated penalties for violations of Keystone's NPDES effluent limits, including its limits for total nitrogen.

      37.     On information and belief, as of March 2019, Keystone had paid approximately $130,000 in stipulated penalties to PaDEP under the COAs.

      38.     According to the information posted on the website for the Pennsylvania Infrastructure Investment Authority (PENNVEST), this Pennsylvania state agency gave Keystone a $11 million loan in January 2018 to construct its new IWTP, and stated that the projected capital cost of that IWTP is $16,536,000.

      39.     Keystone's economic benefit from its delayed and avoided permit compliance greatly exceeds the stipulated penalties it has paid, and may continue to pay, to PaDEP under the first and second COAs.

      40.     The first and second COAs between Keystone and PaDEP were negotiated and signed without any prior public notice to the public or Plaintiffs, and without any opportunity for the public or Plaintiffs to comment on or object to those COAs.

**CLAIM FOR RELIEF**

41. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 40 above.

42. Since at least October 2014, Keystone has discharged and continues to discharge a pollutant from a point source, i.e. total nitrogen from Outfall 001 of its Fredericksburg poultry rendering facility, into Beach Run, Elizabeth Run, and/or Little Swatara Creek in excess of the limits allowed by its NPDES Permit Nos. PA0080829 and PA00266345.

43. Beach Run, Elizabeth Run, Little Swatara Creek and the Susquehanna River are waters of the United States within the meaning of 33 U.S.C. § 1362(7).

44. Keystone will continue to be in violation of its effluent limitations for total nitrogen until its new IWTP is constructed and operating.

45. Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, Keystone is liable for civil penalties for each day of each violation of the effluent limitations for total nitrogen in its permits.

46. Keystone is subject to an injunction under the CWA ordering it to cease its permit violations.

**REQUESTS FOR RELIEF**

Wherefore, Plaintiffs request that this Court issue an order:

1. Declaring that Keystone has violated and is in continuing violation of its NPDES Permit Nos. PA0080829 and PA00266345 and the Clean Water Act;

2. Enjoining Keystone from operating its facilities in such a manner as will result in further violations of its NPDES permit and the CWA;

9

3. Ordering Keystone to immediately comply with effluent limitations contained in its NPDES permit;

4. Ordering Keystone to pay appropriate civil penalties for each violation of its NPDES permits and the CWA;

5. Awarding Plaintiffs their attorney fees, expert witness fees, and all other reasonable expenses incurred in pursuit of this action; and

6. Granting other such relief as this Court deems just and proper.

                                                    Respectfully submitted,

                                                    STEVE HARVEY LAW LLC

Dated: July 29, 2019                By: _____
                                                    Stephen G. Harvey
                                                    1880 John F. Kennedy Blvd.
                                                    Suite 1715
                                                    Philadelphia, PA 19103
                                                    (215) 438-6600
                                                    steve@steveharveylaw.com

                                                    *Counsel for Plaintiffs*