## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**LOWER SUSQUEHANNA
RIVERKEEPER,** *et al.*,

   **Plaintiffs,**

   **v.**                                      **Civil Action No. 1:19-CV-1307**

**KEYSTONE PROTEIN COMPANY,**

   **Defendant.**

## CONSENT DECREE

### I. RECITALS

WHEREAS, Keystone Protein Company ("Keystone") operates a poultry rendering facility and associated waste water treatment plant in Fredericksburg, Pennsylvania.

WHEREAS, on March 30, 2012, the Pennsylvania Department of Environmental Protection ("PADEP") issued an NPDES permit to Keystone, authorizing it to discharge wastewater from the plant into an unnamed tributary of Beach Run ("2012 Permit").

WHEREAS, the 2012 Permit included both interim and final effluent limitations. The interim and final effluent limitations for monthly average and daily maximum total nitrogen concentrations were 134 mg/L (monthly average) and 194

mg/L (daily maximum), respectively.  The 2012 Permit also included annual mass limits for total nitrogen of 19,786 lbs.

WHEREAS, the 2012 Permit was originally in effect from April 1, 2012 until October 31, 2017, but remained in effect through an extension by reason of Keystone's timely application for a permit renewal.  On September 17, 2018, PADEP issued the renewed NPDES permit to Keystone ("2018 Permit"), containing the same total nitrogen limits as the 2012 Permit.

WHEREAS, on the same day that PADEP issued the 2012 Permit, PADEP and Keystone executed a consent order, requiring that Keystone (1) achieve compliance with the permit's interim effluent limitations; (2) by April 1, 2014, submit a permit application for upgrades needed to meet the final NPDES permit limitations; and (3) by October 1, 2016, achieve compliance with the permit's final effluent limitations.  The consent order also included stipulated penalties to address any exceedances of these limitations.

WHEREAS, on September 6, 2016, Keystone sent a letter to PADEP requesting an extension of the deadline to achieve compliance with the permit's final effluent limitations in the original consent order from October 1, 2016 to October 1, 2018.

WHEREAS, on May 24, 2017, Keystone entered into the second consent order with PADEP.  Among other things, this consent order required: (1) that

2

Keystone submit within 60 days an application for the construction of the new treatment plant and expanded poultry rendering facility; (2) that Keystone begin construction of a new treatment plant by December 1, 2019; (3) that Keystone complete the construction of that plant by June 1, 2021; and (4) that Keystone continue to pay stipulated penalties for violations of the interim and final effluent limitations in the permit.

WHEREAS, on or about June 21, 2017, Keystone submitted to PADEP an application for construction of the new plant, which application DEP granted on October 26, 2017 with issuance of Permit No. 3817202.

WHEREAS, on October 5, 2018, Keystone began the process of designing an interim upgrade to the existing treatment plant in order to meet effluent limitations pending construction of the new plant. Unlike the previous proposed upgrade, this upgraded wastewater treatment system was designed to accommodate a large expansion of the facility.

WHEREAS, on or about August 1, 2019, Keystone submitted to PADEP an application for construction of the interim upgrade, which application DEP granted on October 22, 2019 with issuance of Permit No. 3819201.

WHEREAS, on July 29, 2019, after sending notices of alleged violations and their intent to file suit to the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of EPA's Region 3 Office, PADEP,

and to Keystone, Plaintiffs Lower Susquehanna Riverkeeper and Lower Susquehanna Riverkeeper Association commenced this action alleging that Keystone's rendering facility in Fredericksburg, Pennsylvania, was in violation of the concentration limits for total nitrogen in its NPDES Permit No. PA0080829 and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, seeking declaratory and injunctive relief, the imposition of civil penalties, and the award of costs, including attorney's and expert witness fees;

WHEREAS, Keystone answered the Complaint on August 21, 2019, denying any liability for the claims alleged therein, and continues to deny any such liability.

WHEREAS, on November 18, 2019, Keystone and PADEP executed an amendment to the 2017 consent order that required commencement of construction of this upgrade by February 28, 2020, completion of the upgrade by December 31, 2020, and continued payment of stipulated penalties until completion.

WHEREAS, the upgrade was installed and became operational in November 2020. Since then, the expanded facility has achieved compliance with the total daily and monthly nitrogen limitations, with a few exceptions unrelated to the claims at issue in the Complaint, and will achieve compliance with the annual limits for total nitrogen.

4

WHEREAS, for the period covering June 2014 to January 2021, Keystone paid PADEP $232,029.32 in civil penalties for exceeding the total nitrogen limits in its NPDES permits, with a present value of $269,954 as of May 31, 2022.

WHEREAS, the parties filed motions for summary judgment on May 29, 2020. Citing the consent orders, Keystone argued that Plaintiffs' citizen suit was barred because PADEP had already commenced and was diligently prosecuting an action under state law comparable to the CWA. In its February 18, 2021 decision, the Court disagreed with this argument, finding that Pennsylvania's state law is not comparable because it "lacks appropriate measures to provide the public with notice and the opportunity to participate in the decision-making at issue." The Court granted Plaintiffs' motion for summary judgment in part, finding that Keystone had violated the daily maximum nitrogen limit on 288 days.

WHEREAS, on February 26, 2021, Keystone filed a motion seeking an interlocutory appeal of the Court's February 18, 2021 decision. On July 2, 2021, the Court denied that motion and then scheduled a bench trial on remedy to begin on May 31, 2022.

WHEREAS, since that time, Plaintiffs and Keystone ("the Parties") have engaged in settlement discussions in an attempt to resolve Plaintiffs' claims.

WHEREAS, the Parties desire to completely and finally resolve the claims alleged in Plaintiffs' Complaint and notice of intent letters without further litigation.

5

WHEREAS, the Parties have agreed, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and at arm's length; this settlement is fair, reasonable, in the best interest of the Parties and in the public interest; this settlement is consistent with the objective of the CWA "to restore and maintain the chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a); and entry of this Consent Decree will avoid prolonged and complicated litigation between the Parties.

WHEREAS, the Parties have agreed to simultaneously present a copy of this Consent Decree to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency and request that, pursuant to 33 U.S.C. § 1365(c)(3), the Court allow a review period of 45 days prior to entry of the Consent Decree.

WHEREAS, the Parties have consented to entry of this Consent Decree without trial of any issue.

NOW, THEREFORE, without any admission of fact or law, and without any admission by Keystone that it is liable for any of violations alleged by Plaintiffs in its Complaint or notice of intent letters, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

# I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto, pursuant to 28 U.S.C. §§ 2201, 2202, and 1331, and 33 U.S.C. §§ 1365(a)(1) and 1319(d).  Venue is proper in this district under 33 U.S.C. § 1365(c)(1).  Solely for the purposes of this Consent Decree and the underlying Complaint filed by Plaintiffs, Keystone waives all objections and defenses that it may have to the Court's jurisdiction over this action, to the Court's jurisdiction over Keystone, and to venue in this district.  Keystone shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree; however, the Parties reserve any arguments they may have regarding the construction of the terms of this Consent Decree in any proceeding in which the Court is asked to construe or enforce this Decree.  For purposes of entry and enforcement of this Consent Decree, Keystone waives any defense or objection based on Plaintiffs' standing.  Except as expressly provided for herein, this Consent Decree shall not create any rights in any party other than Plaintiffs and Keystone.  Except as provided herein, the Parties consent to entry of this Consent Decree without further notice.

# II.  APPLICABILITY

2.      The provisions of this Consent Decree shall apply to and be binding upon the Parties, as well as each individual Party's successors and assigns.

### III.  GENERAL PROVISIONS

3.      Every term expressly defined by this Consent Decree shall have the meaning given to that term by this Consent Decree and, except as otherwise provided in this Decree, every other term used in this Decree that is also a term under the CWA or the regulations implementing the CWA shall mean in this Decree what such term means under the CWA or those implementing regulations.

4.      This Consent Decree is not a permit, and it does not bind PADEP with respect to any decision within the scope of its delegated permitting authority under the CWA.  Nothing in this Consent Decree is intended to, or shall, alter or waive any applicable law.

5.      This Consent Decree does not limit, enlarge or affect the rights of any Party to this Consent Decree as against any third parties.

6.      This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree, and, unless otherwise agreed to in writing by the Parties by express reference to this Consent Decree, supersedes all prior agreements and understandings between the Parties related to the subject matter herein.  No document, representation, inducement, agreement, understanding or promise constitutes any part of this Decree or the settlement it represents, nor shall they be used in construing the terms of this Consent Decree.

## IV.    PAYMENTS FOR ENVIRONMENTAL MITIGATION PROJECTS

7.    Within 30 days after the entry of this Decree by the Court, Keystone shall pay a total of $1,000,000.00 for the environmental projects below as remediation and mitigation for amounts of total nitrogen discharged by Keystone into Beach Run, a tributary in the Chesapeake Bay watershed (*i.e.*, Beach Run to Elizabeth Run to Little Swatara Creek to Swatara Creek to the Susquehanna River to the Bay).  The Court finds and the parties agree that the amount paid under this Consent Agreement and the projects identified below are consistent with the purpose of the CWA and constitute remediation for alleged damage or harm that was caused by Keystone's alleged violations of the CWA.  Moreover, the Court finds and the parties agree that the locations of the projects below are in the same watershed as the area allegedly impacted by the discharges from Keystone's facility.  Incorporated into this Consent Decree are the attached funding agreement letters that have been signed by the respective funding recipients identified below:

   a.    Keystone will pay $238,800 to the Doc Fritchey Chapter of Trout Unlimited for the full cost of the Hammer Creek Headwaters Alternate Restoration Plan.  Hammer Creek is a tributary of Coalico Creek in the Susquehanna River watershed.  This project proposes natural channel design on a farm in eastern Lebanon County to restore the severely eroded embankments and create habitat for fish (trout).  The length of the project is

9

2,566 feet.  The total estimated reductions are 302.09 pounds per year of total nitrogen, 80.31 pounds per year of total phosphorus, and 419,874 pounds per year of total suspended solids.  A check for the amount above shall be made payable to Trout Unlimited 108, Doc Fritchey Chapter, and addressed to Russell Collins, P.O. Box 227, Palmyra, PA 17078.

  b.  Keystone will pay $446,300 to the Watershed Alliance of York for the partial cost of the Muddy Creek Watershed Project.  This project includes 2,157 linear feet of stream restoration, 1.25 acres of wetland restoration, and 4.31 acres riparian reforestation in an unnamed tributary of Bald Eagle Creek.  It will restore/realign the stream using two distinct stream restoration approaches, as well as restore wetlands.  The project will include stream fencing to limit cattle access to the restored areas and concrete panel crossings will be installed for agricultural use.  Within the fence will be a riparian buffer planting.  This project will reduce the amount of sediment and nutrients entering the creek.  The total estimated reductions for the full project are 2,473.61 pounds per year of total nitrogen, 553.45 pounds per year of total phosphorus, and 478,373.81 pounds per year of total suspended solids.  A check for the amount above shall be made payable to Watershed Alliance of York and addressed to Rachel Stahlman, 2401 Pleasant Valley Road, York, PA 17402.

c.      Keystone will pay $75,000 to the Conservation Foundation of Lancaster County for the full cost of the Simeon Esh Project.  The project will improve Conowingo Creek, which is a tributary of the Susquehanna River, by constructing 3,000 linear ft of stream restoration work, aquatic habitat improvements, bank stabilization, streambank fencing and riparian buffer installation.  The total estimate reduction is 594 tons of sediment per year.  A check for the amount above shall be made payable to the Conservation Foundation of Lancaster County and addressed to Jay Snyder, Farm & Home Center, 1383 Arcadia Road, Room #200, Lancaster, PA 17601.

d.      Keystone will pay $162,500 to the Conservation Foundation of Lancaster County for one half of the cost of the Donegal Creek Project (the other half will be grant-funded).  The project would improve over 6,500 linear feet of Donegal Creek, a tributary of Chiques Creek in the Susquehanna River watershed, by stabilizing streambanks, installing aquatic habitat, adding additional buffer acres, and improving livestock crossings and fencing.  The total estimated reduction is 400 tons of sediment per year.  A check for the amount above shall be made payable to the Conservation Foundation of Lancaster County and addressed to Jay Snyder, Farm & Home Center, 1383 Arcadia Road, Room #200, Lancaster, PA 17601.

e.    Keystone will pay $77,400 to Dickinson College's Alliance for Aquatic Resource Monitoring (ALLARM) to support community monitoring of water quality and stream health in the Lower Susquehanna River watershed. ALLARM, founded in 1986, implements and supports community-based water quality data collection programs throughout Pennsylvania and New York. ALLARM engages volunteers in stream health assessments and use data for local change through two of its programs, Susquehanna Stream Team and Community-based Restoration Monitoring. A check for the amount above shall be made payable to Dickinson College - ALLARM and addressed to Alliance for Aquatic Resource Monitoring (ALLARM), Dickinson College, P.O. Box 1773, Carlisle, PA 17013.

8.    A copy of the check and cover letter from Keystone or its counsel to each of the recipients in paragraph 7 above shall be sent to counsel for Plaintiffs at the time each payment is made and shall state that the payment is being made pursuant to this Consent Decree.

9.    The respective organizations named in Paragraph 7(a) through 7(e) shall, after completion of the respective environmental projects described in Paragraph 7(a) through 7(e), each use any remaining funds for purposes that relate to water remediation in the Chesapeake Bay watershed.

10.    Payments of the amounts in paragraph 7 above shall completely discharge Keystone from any liability under 33 U.S.C. § 1365 arising from any violation of its NPDES Permit No. PA0080829 prior to the entry of this Decree.

## V.  ATTORNEY'S FEES AND COSTS

11.    Within 30 days after the entry of this Decree by the Court, Keystone shall pay Plaintiffs $340,691.64 for their reasonable costs, expert fees, and attorneys' fees as provided by 33 U.S.C. § 1365(d).

12.    The payment pursuant to paragraph 11 shall be made payable to Steve Harvey Law LLC, which shall be wholly responsible for the proper distribution of any portions of the delivered sum to any and all attorneys, experts, or other entities who may be entitled thereto.

13.    The sum set forth in paragraph 11 shall be a complete settlement of Plaintiffs' claims for costs and fees incurred in this case up to the date of lodging of this Consent Decree.

## VI.  GENERAL PROVISIONS

14.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

15.    The Court shall retain jurisdiction over this action until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or effectuating or enforcing compliance with the terms of this Decree.

16.    The terms of this Consent Decree shall not be modified except by a subsequent written agreement signed by the Parties, or by further orders of the Court, and shall not take effect until approval by the Court.

17.    This Decree shall terminate when Keystone has made all payments that it is obligated to make hereunder.

18.    Plaintiffs agree to lodge this Consent Decree with the Court and to prepare and submit any related papers to the Court, subject to Keystone's review and approval.   Keystone's agreement to Plaintiffs' proposed language will not be unreasonably withheld.   The Parties agree to cooperate in good faith to obtain the Court's review and entry of this Consent Decree.

19.    Pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of forty-five (45) days. After the review period has elapsed, the Consent Decree may be entered by the Court.   If the Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

20.    The Parties agree to cooperate in good faith to expeditiously obtain EPA and United States Attorney General ("Department of Justice" or "DOJ") review and District Court approval of this Consent Decree.  In the event that EPA or DOJ comments upon the terms of this Consent Decree, the Parties agree to discuss such comments to support the entry of the Consent Decree or to make revisions to the Consent Decree as the Parties determine may be appropriate.

21.    Each undersigned representative of Plaintiffs and Keystone certifies that he or she is fully authorized to agree to the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

22.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment in this matter.

**SO ORDERED.**


  s/Jennifer P. Wilson
The Honorable Jennifer P. Wilson
United States District Court Judge
Middle District of Pennsylvania


This  21st  day of July  , 2022.

15

**Lower Susquehanna Riverkeeper**

By:

Name: Ted Evgeniadis

Title: Lower Susquehanna Riverkeeper

Date: 5/26/2022

**Lower Susquehanna Riverkeeper Association**

By:

Name: Ted Evgeniadis

Title: Executive Director

Date: 5/26/2022

**Keystone Protein Company**

By:_____

Name: _____

Title: _____

Date: _____

16

**Lower Susquehanna Riverkeeper**

By:_____

Name: _____

Title: _____

Date: _____

**Lower Susquehanna Riverkeeper Association**

By:_____

Name: _____

Title: _____

Date: _____

**Keystone Protein Company**

By: _____

Name: _____

Title: _____

Date: _____

# EXHIBIT A

Tuesday, April 26, 2022

Citizen Suit Coordinator
Attorney Law and Policy Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Dear Mr. Gualtieri and Ms. McDonald,

   Please accept this letter as an agreement by Trout Unlimited 108, Doc Fritchey Chapter to use the proposed funds from the settlement in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*, Civil Action No. 1:19-CV-1307 (M.D. Pa.), in a manner consistent with the uses described in the Proposed Consent Decree and in this letter.  We would be happy to discuss our involvement in this project and the use of the funds at any time that is convenient.

   Trout Unlimited 108, Doc Fritchey Chapter is a 501(c)(3) tax-exempt organization.  Our organization is a grassroots volunteer organization, whose mission is "to conserve, protect and restore trout and salmon fisheries and their watersheds." in Dauphin and Lebanon Counties.   We are currently involved in conservation projects on the Spring Creek Watershed in Hershey PA, several projects in the Quittapahilla and it's tributaries, and now, four projects in the Hammer Creek Watershed in Lebanon County.  We would be happy to provide specific details for any of the conservation work being done by our organization.

   On behalf of Trout Unlimited 108, Doc Fritchey Chapter, I have read the Proposed Consent Decree in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*.  Trout Unlimited 108, Doc Fritchey Chapter is happy to serve as the Plaintiffs' representative, as described in the Decree, and will use any and all funds received in the manner specifically described in the Decree.  Under no circumstances will any money received from the proposed Decree be used for political lobbying activities.  Finally, following the expenditure of the funds Trout Unlimited 108, Doc Fritchey Chapter will submit to the Court, to the United States, and to the parties a letter describing how the funds were spent.  Trout Unlimited 108, Doc Fritchey Chapter agrees to spend funds as described in the Decree.  We make a practice of maintaining segregated funds and bookkeeping records in circumstances like this.

   We are grateful for the opportunity to receive funding through this Consent Decree, which will provide needed restoration to the lands and waters in Pennsylvania.  Please feel free to contact us with any follow-up questions you may have about this letter.

Sincerely,

Russell W. Collins, Immediate Past President
National Leadership Council Representative
 Pennsylvania Council of Trout Unlimited
P.O. Box 227
Palmyra, PA  17078  (717) 580-3958

# **EXHIBIT B**



2401 Pleasant Valley Rd., York, PA 17402
717.640.7430 | watershedallianceofyork.org

Citizen Suit Coordinator
Attorney Law and Policy Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Dear Mr. Gualtieri and Ms. McDonald,

Please accept this letter as an agreement by the Watershed Alliance of York (WAY) to use the proposed funds from the settlement in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*, Civil Action No. 1:19-CV-1307 (M.D. Pa.), in a manner consistent with the uses described in the Proposed Consent Decree and in this letter. We would be happy to discuss our involvement in this project and the use of the funds at any time that is convenient.

The Watershed Alliance of York is a 501(c)(3) tax-exempt organization. The mission of our organization is to improve York County's water, making it cleaner and healthier for all. We are currently involved in implementation of the York Countywide Action Plan, with the goal of reducing four million pounds of nitrogen from our waters by 2025.

On behalf of WAY, I have read the Proposed Consent Decree in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*. We are happy to serve as the Plaintiffs' representative, as described in the Decree, and will use any and all funds received in the manner specifically described in the Decree. Under no circumstances will any money received from the proposed Decree be used for political lobbying activities. Finally, following the expenditure of the funds, WAY will submit to the Court, to the United States, and to the parties a letter describing how the funds were spent. We agree to spend funds as described in the Decree.

WAY is grateful for the opportunity to receive funding through this Consent Decree, which will provide needed restoration to the lands and waters in Pennsylvania. Please feel free to contact us with any follow-up questions you may have about this letter.

In Stewardship,

Rachel Stahlman | President, WAY

TO IMPROVE YORK COUNTY'S
WATER, MAKING IT CLEANER AND HEALTHIER FOR ALL.

# **EXHIBIT C**



### Conservation Foundation of Lancaster County

Citizen Suit Coordinator
Attorney Law and Policy Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Dear Mr. Gualtieri and Ms. McDonald,

Please accept this letter as an agreement by the <u>Conservation Foundation of Lancaster County</u> (Foundation) to use the proposed funds from the settlement in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*, Civil Action No. 1:19-CV-1307 (M.D. Pa.), in a manner consistent with the uses described in the Proposed Consent Decree and in this letter. We would be happy to discuss our involvement in this project and the use of the funds at any time that is convenient.

The Foundation was founded in 2007 as the fundraising arm of the Conservation District and is a tax exempt 501(c)3 nonprofit organization. The mission of the Foundation is to promote, support, and sustain the stewardship, education and conservation activities undertaken by the Lancaster County Conservation District and our local partners. The primary goal of the Lancaster County Conservation District is to build a sustainable future for all citizens of Lancaster County. The District helps restore damaged ecosystems and teaches both children and adults the importance of clean water and a healthy natural environment. We are currently involved in 10 active stream improvement projects throughout the County.

On behalf of the Foundation, as its current President, I have read the Proposed Consent Decree in *Lower Susquehanna Riverkeeper v. Keystone Protein Company*. Jay R. Snyder is happy to serve as the Plaintiffs' representative, as described in the Decree, and will use any and all funds received in the manner specifically described in the Decree. Under no circumstances will any money received from the proposed Decree be used for political lobbying activities. Finally, following the expenditure of the funds the Foundation will submit to the Court, to the United States, and to the parties a letter describing how the funds were spent. The Foundation agrees to spend funds as described in the Decree.

We are grateful for the opportunity to receive funding through this Consent Decree, which will provide needed restoration to the lands and waters in Pennsylvania. Please feel free to contact us with any follow-up questions you may have about this letter.

Sincerely,

*Jay R. Snyder*

Jay R. Snyder, president
Conservation Foundation of Lancaster County
Farm & Home Center
1383 Arcadia Rd., Room #200
Lancaster, PA 17601

# **EXHIBIT D**



Office of the Provost & Dean

P.O. Box 1773
Carlisle, Pa 17013-2896
(717) 245-1321  phone

May 23, 2022

Citizen Suit Coordinator
Attorney Law and Policy Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Dear Mr. Gualtieri and Ms. McDonald:

Please accept this letter as an agreement by Dickinson College – Alliance for Aquatic Resource
Monitoring (ALLARM) to use the proposed funds from the settlement in *Lower Susquehanna
Riverkeeper v. Keystone Protein Company*, Civil Action No. 1:19-CV-1307 (M.D. Pa.), in a
manner consistent with the uses described in the Proposed Consent Decree and in this letter. We
would be happy to discuss our involvement in this project and the use of the funds at any time that
is convenient.

Dickinson College is a 501(c)(3) tax-exempt organization. Our organization the Alliance for
Aquatic Resource Monitoring (ALLARM) is an aquatic community science center at Dickinson
College. Since its founding in 1986, ALLARM has become a nationally recognized technical and
programmatic support center for community organizations interested in watershed assessment,
protection, and restoration. ALLARM strive engage volunteers in stream health assessments and
use data for local change through two of its programs Susquehanna Stream Team and Community-
based Restoration Monitoring.

On behalf of Dickinson College, I have read the Proposed Consent Decree in *Lower Susquehanna
Riverkeeper v. Keystone Protein Company*. Dickinson College – ALLARM will spend the funds it
receives under the Decree for the purposes described in the Decree. Under no circumstances will
any money received from the proposed Decree be used for lobbying activities.  Finally, following
the expenditure of the funds Dickinson College – ALLARM will submit to the Court, to the United
States, and to the parties a letter describing how the funds were spent.

Gualtieri & McDonald, Page 2


We are grateful for the opportunity to receive funding through this Consent Decree, which will provide needed restoration to the lands and waters in Pennsylvania. Please feel free to contact us with any follow-up questions you may have about this letter.


Cordially,

Neil B. Weissman
Provost and Dean of the College


NBW:kje